1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8   SHELLI LOUISE BURTON,

9                    Plaintiff,              CASE NO. C16-5755-RSL-MAT

10         v.

11  NANCY A. BERRYHILL, Acting               REPORT AND RECOMMENDATION
    Commissioner of Social Security,         RE: SOCIAL SECURITY DISABILITY
12                                           APPEAL
                     Defendant.
13

14         Plaintiff Shelli Burton proceeds through counsel in her appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16  plaintiff's application for Disability Insurance Benefits (DIB) and partially denied her application

17  for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge

18  (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda

19  of record, the Court recommends this matter be REMANDED for further administrative

20  proceedings.

21  / / /

22  / / /

23  / / /

REPORT AND RECOMMENDATION
PAGE - 1

# **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1]  She obtained her GED and previously worked as an inspector and hand packager, telephone solicitor, collection clerk, industrial cleaner, and janitor. (AR 178, 591.)

Plaintiff filed DIB and SSI applications in March 2009, alleging disability beginning August 1, 2007. (AR 141, 148.)  She remained insured for DIB through March 31, 2011 and was required to establish disability on or prior to that "date last insured" (DLI) to receive DIB.  20 C.F.R. §§ 404.131, 404.321.  Her applications were denied initially and on reconsideration.

ALJ Verrell Dethloff held a hearing on February 17, 2011 (AR 42-67) and issued a decision finding plaintiff not disabled on March 22, 2011 (AR 14-36).  Following a denial of review by the Appeals Council (AR 5-7), plaintiff appealed to this Court, where, in June 2012, the parties stipulated to a remand (AR 711-12 (stating plaintiff's counsel asked for, but did not receive a copy of the hearing recording and final exhibit file prior to Appeals Council denial)).

The Appeals Council considered additional information, but denied review.  (AR 713-17.) In August 2014, plaintiff filed additional DIB and SSI applications and another appeal in this Court.  (AR 719-26.)  The parties again stipulated to a remand, and the Appeals Council remanded to an ALJ with directions to consider a number of issues and to consolidate plaintiff's 2009 and 2014 applications.  (AR 776-93.)

On March 29, 2016, ALJ Laura Valente held a second hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 605-45.)  On June 29, 2016, the ALJ issued a decision finding plaintiff not entitled to DIB and entitled to SSI beginning June 1, 2015.  (AR 581-93.)

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

Plaintiff timely appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's fibromyalgia, bilateral carpal tunnel syndrome, Achilles tendonitis, status-post multiple surgeries, including reconstructive surgery, obesity, mood disorder, panic disorder, borderline personality disorder, and history of substance abuse. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed RFCs for the periods before and after June 1, 2015. Prior to June 1, 2015, the ALJ found plaintiff capable of medium work, except that she was limited to simple, repetitive work that was non-collaborative in nature, with no more than infrequent and superficial interaction with the general public. Beginning on June 1, 2015, the ALJ found plaintiff had the RFC to perform sedentary work with additional limitations, including: lifting and carrying five pounds occasionally and frequently; fingering and gross handling occasionally; sitting for thirty minutes at a time and standing and walking fifteen

minutes at a time, for up to four hours total in an eight-hour workday; occasionally push and pull with bilateral lower extremities; occasional postural movements, but never climbing ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibrations and extreme cold. Also, plaintiff had sufficient concentration only for simple, repetitive tasks; could maintain concentration and pace for two-hour increments, but only for five hours in an eight-hour workday; and is unable to make workplace decisions or use workplace judgment throughout the day.

The ALJ found plaintiff, prior to June 1, 2015, able to perform her past relevant work as an industrial cleaner and inspector/hand packager. Beginning June 1, 2015, plaintiff's RFC prevented her from performing any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff, prior to June 1, 2015, also capable of performing other jobs, such as work as a hand packager and hospital cleaner. Beginning June 1, 2015, there were no jobs existing in significant numbers in the national economy plaintiff could perform. The ALJ found plaintiff not disabled prior to June 1, 2015 and not disabled at any point prior to her March 31, 2011 DLI, but that she became disabled as of June 1, 2015 and continued to be disabled through the date of the ALJ's June 29, 2016 decision.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial

REPORT AND RECOMMENDATION
PAGE - 4

evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to give legally sufficient reasons for rejecting the opinions of two State agency medical consultants, and failed to properly consider the medical evidence in determining that, prior to June 1, 2015, she could stand and walk most of the workday and was unlimited in her ability to reach, handle, and finger. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## State Agency Medical Consultants' Opinions

Plaintiff avers error in the ALJ's consideration of the opinions of nonexamining State agency medical consultants Drs. Wayne Hurley and Howard Platter. Considering plaintiff's RFC through March 2011, the date of the first ALJ decision, Dr. Hurley assessed plaintiff as capable of medium work. (AR 732-33.) Considering evidence subsequent to that time and current to his November 2014 evaluation, Dr. Hurley assessed plaintiff as capable of light work, with other limitations, as described below. (AR 741-43.) Dr. Platter, in April 2015, wholly adopted Dr. Hurley's opinion as to light work. (AR 753-55.)

The State agency physicians explained the light work limitations of occasionally lifting twenty pounds, frequently lifting ten pounds, standing, walking, and/or sitting about six hours in an eight-hour workday, never climbing ladders, ropes, or scaffolds, and occasionally balancing, stooping, kneeling, crouching, and crawling as based on plaintiff's degenerative disc disease and

left posterior ankle impingement. (AR 741-42, 753-54.) Limitations to occasional reaching and frequent handling and fingering were attributed to right shoulder impingement syndrome and arthritis and left trigger finger. (AR 742, 754-55.) Based on her headaches and back and ankle impairments, they opined plaintiff should avoid concentrated exposure to vibration and hazards and even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (AR 743, 755.)

The ALJ gave only partial weight to these opinions, finding the physicians failed to take plaintiff's range of activities into consideration, including her ability to attend college courses. (AR 586.) This followed the ALJ's assignment of only partial weight to a similar, November 2009 opinion of nonexamining State agency physician Dr. R.G. Hoskins limiting plaintiff to light work. (*Id.*) The ALJ found that earlier opinion not fully consistent with plaintiff's report of numerous independent activities, or accounting for her use of only over-the-counter medications for pain symptoms. (*Id.*)

As the Commissioner observes, an ALJ may discount the opinion of a non-examining physician "by reference to specific evidence in the medical record[,]" *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998), and may discount a medical opinion when it is inconsistent with a claimant's level of activities, *see Morgan v. Commissioner of the SSA*, 169 F.3d 595, 601-02 (9th Cir. 1999). The Commissioner argues the ALJ satisfied this standard. She contrasts, for example, the limitation to occasionally reaching and stooping with the evidence plaintiff had been functioning well enough to clean her neighbor's house, perform community service work at Builders Bargain Warehouse (where she "'excel[led] in her work"), sing in her church choir, travel to eastern Washington and Idaho with her husband, complete numerous hours of job training, attend college courses, drive, cook, perform household chores, and attend various outings, including church and a holiday cookie party. (*See* AR 429-32, 436, 491, 549, 1103.) The Court,

however, finds the ALJ's reasoning deficient.

The activities cited by the ALJ are clearly relevant to Dr. Hurley's assessment that, through March 2011, plaintiff was capable of medium level work. For example, in December 2009, plaintiff reported cleaning her neighbor's house in exchange for parking and living in a travel trailer in their driveway. (AR 491.) (*But see* AR 490 (plaintiff reported, some two weeks later, that she was feeling better because the family had reduced their expectations regarding cleaning).) Between February and December 2010, plaintiff reported her community service work, church attendance and activities, travel, holiday cookie party, and attending job training. (AR 428-36.) In February 2011, she reported her ability to manage her family's household, including cooking and meal preparation, laundry, and driving her husband to welding school. (AR 539.)

Yet, Drs. Hurley and Platter found plaintiff limited to light work in November 2014 and April 2015, years after the above-described activities. The only additional activity cited by the ALJ in rejecting these opinions entailed the evidence, dated in and around July 2014, of plaintiff's community college attendance. (*See* AR 1103, 1106). The record reflects plaintiff's reports of beginning community college in early 2012 (AR 1649-50), and, although struggling and failing classes at times (*see* AR 1672, 1096, 1831, 1827), continuing in school at least through October 2014 (AR 1675 ("very busy in school and is currently on her last quarter to get her associates degree").) In late December 2014, plaintiff reported she "had to stop attending school due to not being able to manage with her foot surgery." (AR 1678.) (*See also* AR 627 (at hearing, plaintiff testified she "ended up flunking out."))

The ALJ did not describe Dr. Hurley's assessment of plaintiff through March 2011 and did not, as such, take note of this physician's opinion as to a reduction in plaintiff's ability from medium to light level work activity. The ALJ further failed to acknowledge the gap in time

between the 2014/2015 opinions of Drs. Hurley and Platter and the vast majority of activities cited as inconsistent with their opinions. It is unclear whether plaintiff's college attendance, standing alone, suffices to support the rejection of the opinions of these physicians regarding a limitation to light work.

A review of the two other medical opinions addressing plaintiff's physical impairments and dated subsequent to the March 2011 ALJ decision further undermines the ALJ's assessment of the opinions of Drs. Hurley and Platter. Treating nurse practitioner Margaret Sandler, on June 16, 2010, opined that, based on plaintiff's continued problems with her ankle tendon, "a part time sedentary activity would be a perfect fit." (AR 258.) The ALJ gave little weight to this non-acceptable medical source's opinion, finding it not consistent with a contemporaneous June 16, 2010 note by treating podiatrist Dr. Kenneth Brewer. Dr. Brewer noted plaintiff's report of "'mild improvement'" after three weeks of using a walking boot, and observed plaintiff was not in acute distress, had decreased swelling to her Achilles tendon and mild tenderness, and that the Achilles tendon was intact with good strength. (AR 588 (citing AR 466).)

Dr. Brewer, on May 17, 2016, assessed plaintiff as able to lift less than ten pounds, stand/walk for less than two hours a day, sit for about two hours a day, with the need to shift at will and elevate her foot/feet, and the need for complete freedom to rest throughout the day and more than four anticipated absences per month. (AR 2409.) He attributed plaintiff's limitations to her chronic pain and opined they were permanent and had existed to this extent prior to March 31, 2011. (AR 2410.) The ALJ found this opinion not fully consistent with the longitudinal record dating back to before March 31, 2011, pointing to plaintiff's February 2011 report of her household and driving tasks, and her July 2010 report she was pushing to complete fifty hours of job training in two weeks so that she could go on vacation to Spokane and Idaho. (AR 590 (citing AR 549 and

432 ("reports starting job training . . ., but can only attend the classroom parts of the program at the moment; says she's pushing to complete her 50hrs in two weeks so she can go on her vacation.")) The ALJ also found this opinion not consistent with Dr. Brewer's own treatment records from June 2010, described above.

The ALJ did, however, find Dr. Brewer's opinion consistent with the evidence beginning June 1, 2015, accorded it partial weight, and found plaintiff limited to sedentary work as of that date. (*Id.*) The ALJ pointed to the fact plaintiff underwent right carpal tunnel release surgery in June 2015, which resulted in decreased range of motion, strength, and functional use of her right upper extremity. (AR 589.) Also, beginning June 2015, treating physician Dr. Gordon Cromwell recommended rest for both Achilles tendons, due to increased tendonitis, which eventually resulted in Achilles tendon secondary reconstruction surgery on December 3, 2015 and impaired plaintiff's ability to function. (*Id.* (citing AR 2064, 2113, and 2051).)

The Court finds the ALJ's rejection of the opinions of Drs. Hurley and Platter to lack the support of substantial evidence. This error is not harmless given that their opinions, including various postural and manipulative limitations, implicate the ALJ's decisions as to both past relevant work and other jobs existing in the economy. (*See* Dkt. 11 at 4-5.) The ALJ should, on remand, reconsider all of the opinion evidence from Drs. Hurley and Platter and, if rejecting their opinions, provide substantial evidence support for the conclusion, including reference to evidence relevant to the time periods in which they rendered their opinions.

## Ability to Stand and Walk

Plaintiff contends the ALJ failed to properly consider the medical evidence in determining that, from August 1, 2007 through May 31, 2015, she could stand and walk through most of the workday. She contends ankle and hip impairments affected her ability to walk from August 2009

through the present and challenges the ALJ's consideration of evidence related to these impairments, as described below.

Consultative examiner Dr. Mark Heilbrunn examined plaintiff in August 2009. Dr. Heilbrunn noted plaintiff was able to complete all ranges of motion within her ability, mount/dismount the examination table, and did not appear overly fatigued. (AR 349.) She had adequate balance on either leg independently, and was able to crouch, kneel, crawl, and stoop almost to floor level. (*Id*.) She had normal station and gait and negative Romberg. (AR 350.) She had "bilaterally tenderness and nodularity of the Achilles tendons" and eighteen positive tender points, but normal muscle strength and no atrophy, intact sensation, and normal deep tendon reflexes. (*Id*.)

The ALJ assigned significant weight to many of Dr. Heilbrunn's opinions based on his examination, including, *inter alia*, that plaintiff had a moderate postural range of motion limitation of her lumbar back, but no manipulative or other postural range of motion limitations; had full use of her hands and arms for work activities; could sit for at least thirty minutes uninterrupted and had no maximum sitting limitation with periods for postural repositioning; should be able to negotiate steps, uneven terrain, and hills; did not need an assistive device; had adequate balance on either leg; had no postural limitations in stooping, kneeling, crouching, and crawling; and had adequate balance, and could occasionally climb. (AR 352-53, 584-85.) The ALJ found these opinions consistent with the objective findings from the evaluation, including plaintiff's normal gait and station, negative Romberg, negative straight-leg raise, normal motor strength, and intact sensation through upper and lower extremities bilaterally. (AR 585.)

The ALJ gave little weight to other portions of Dr. Heilbrunn's opinion based on discrepancies with the objective clinical observations and findings. (*Id*.) She pointed to the

opinion plaintiff could stand or walk for at least fifteen minutes uninterrupted, "'as manifested in the examination' with a 'maximum standing/walking capacity of up to 4 out of 8 hours with a moderate limitation secondary to lumbar strain and bilateral Achilles tendonitis[,]'" and the opinion plaintiff could lift and carry a maximum of five pounds with either hand on a frequent basis. (*Id*. (discussing AR 352).) The ALJ noted Dr. Heilbrunn's observation that the degree to which plaintiff's fatigue and myalgias, secondary to fibromyalgia, limit her activities could not be assessed in the physical examination, and "[b]y history they are limiting conditions." (AR 352, 585.) The ALJ found these aspects of the opinion "notably inconsistent" with Dr. Heilbrunn's observations that plaintiff did not appear overly fatigued, had normal muscle strength, grip strength, and deep tendon reflexes, intact sensation, and no muscle atrophy. (AR 585.)

Plaintiff states that Dr. Heilbrunn's report contains the first mention of Achilles tendonitis in the record, that he noted tenderness and nodularity of the Achilles tendons bilaterally, and that the ALJ later found plaintiff limited to sedentary work, in part, due to Achilles tendonitis. She maintains the ALJ erred in rejecting Dr. Heilbrunn's opinion given that his evaluation shows she had Achilles tendonitis at the time.

Plaintiff also outlines the evidence relating to her Achilles tendonitis subsequent to Dr. Heilbrunn's report. (*See* Dkt. 11 at 11-15.) For example, while she did report mild improvement to Dr. Brewer in June 2010, she reported no improvement in her left Achilles tendon the following month, when Dr. Brewer noted swelling, moderate tenderness, and limited range of motion. (AR 462.) Dr. Brewer recommended surgery in July 2010, which he performed the following month. (*Id*. and AR 454-56.) Plaintiff cites to additional records as showing her continuing symptoms, observations on examination, treatment including injections, physical therapy, and use of a walking boot, and additional surgeries performed in August 2011 and September 2014. (Dkt. 11

at 11-15).  Plaintiff asserts error in the ALJ's failure to discuss this evidence showing ongoing limitations in weight-bearing activities due to her ankle impairment.

Plaintiff also points to the ALJ's partial rejection of Dr. Brewer's opinion finding her limited to less than two hours of standing and walking.  (AR 590, 2409-10.)  The ALJ, as stated above, accepted this opinion only as of the period beginning June 1, 2015.  Plaintiff avers error in that the ALJ failed to consider any of the evidence between plaintiff's June 2010 report of mild improvement and her acceptance of Dr. Brewer's opinion beginning June 2015.

Plaintiff, finally, maintains error in the ALJ's failure to consider the evidence of her trochanteric bursitis at step two or beyond.  She cites to the record as showing her reports of hip pain as early as December 2006, her contention her hip prevented her from working and affected her ability to sit and walk, evidence of a CT scan, MRI, physical therapy, a finding of weakness on examination, and the instruction to use a cane due to hip pain and weakness.  (*See* Dkt. 11 at 15-16.)

The Commissioner denies any error in the ALJ's assessment of the evidence associated with plaintiff's standing and walking abilities.  The Commissioner argues the ALJ provided valid reasons for rejecting the opinion evidence, offered a reasonable interpretation of the evidence that should not be substituted with a different interpretation by this Court, and that the omission of a hip impairment at step two was inconsequential given the ALJ's recognition of plaintiff's hip-related complaints and evidence throughout the analysis and in the RFC.

The Court, however, finds the ALJ's consideration of the evidence associated with plaintiff's ability to stand and walk deficient.[2]  The ALJ failed to adequately address the evidence

---

[2] The parties do not specifically address whether the record contains contradicted or un-contradicted physician opinions, but appear to agree the ALJ was required to provide specific and legitimate reasons for

associated with plaintiff's Achilles tendonitis prior to June 1, 2015. On remand, the ALJ should reassess Dr. Heilbrunn's opinion that plaintiff was limited in standing and walking due to her Achilles tendonitis and, if this opinion is rejected, provide reasons separate and apart from those offered in relation to Dr. Heilbrunn's fibromyalgia-related assessment. (*See* AR 585.) The ALJ should also reconsider other evidence of record associated with Achilles tendonitis, including the opinions of Dr. Brewer and medical records subsequent to the report of mild improvement and continuing through the date on which the ALJ found plaintiff limited to sedentary work. The ALJ should further take the opportunity on remand to consider whether or not trochanteric bursitis constitutes a severe impairment at step two and, as appropriate, reflect consideration of that impairment at subsequent steps of the sequential evaluation.

Reach, Handle, and Finger

Plaintiff avers a failure to properly consider the medical evidence in the ALJ's determination that, prior to June 1, 2015, she was unlimited in her ability to reach, handle, and finger. She outlines the medical evidence of record associated with her bilateral wrist and elbow pain beginning in February 2010, including that associated with carpal tunnel syndrome and observations of tendinitis, tendinopathy, and tenosynovitis, carpal tunnel release surgery performed in April 2010, September 2012, June 2015, and planned for March 2016, as well as

---

rejecting the opinions of Drs. Heilbrunn and Brewer. (*See* Dkt. 11 at 15, Dkt. 15 at 6, and Dkt. 16 at 5-6.) *See also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (ALJ should, in general, afford more weight to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician; where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons; where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing.") (quoted sources omitted). Whatever the standard applied, the Court finds the ALJ's assessment deficient and lacking the support of substantial evidence for the reasons discussed above.

other treatment, including injections, a thumb brace, and occupational therapy. (*See* Dkt. 11 at 16-17.) Plaintiff notes that the ALJ only discussed evidence from June 2015 (*see* AR 589) and requests remand for a determination of when her hand limitations began.

The Commissioner points to medical records in which no hand or arm abnormalities were found, including the August 2009 examination of Dr. Heilbrunn. (Dkt. 15 at 7-8.) The Commissioner also points to the evidence of activities presumably requiring use of plaintiff's hands and arms, such as cleaning her neighbor's house, performing community service and job training, attending college, driving, cooking, and performing household chores. The Court, however, again agrees with plaintiff that the ALJ should further consider the evidence associated with any limitations in reaching, handling, and fingering.

As stated above, the Court finds further consideration of the medical opinions of Drs. Hurley and Platter necessary. Because those opinions include limitations to occasional reaching and frequent handling and fingering (AR 742, 754-55), the ALJ's error in relation to this opinion evidence implicates the consideration of evidence associated with any hand/arm impairments.

Plaintiff also accurately observes that the ALJ's decision limits the discussion of evidence associated with plaintiff's hand/arm impairments to the carpal tunnel surgery performed in June 2015. (AR 589.) The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009). The ALJ did not reject any earlier-dated evidence by reference to the medical records or activities cited to here by the Commissioner, some of which appears to predate plaintiff's reporting of hand/arm pain.

Finally, and as the ALJ noted in the decision, the addition of a limitation to only occasional

REPORT AND RECOMMENDATION
PAGE - 14

handling and fingering served as the most significant vocational limitation added to the hypothetical which led to the determination that plaintiff was disabled as of June 1, 2015. (AR 641-42 and AR 592.) The ALJ should, on remand, reconsider the evidence associated with plaintiff's hard/arm impairments.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 5, 2017**.

DATED this <u>19th</u> day of April, 2017.


_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15